**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ALAMO RECORDS, LLC, ARISTA MUSIC, ARISTA RECORDS, LLC, LAFACE RECORDS, LLC, RECORDS LABEL, LLC, SONY MUSIC ENTERTAINMENT US LATIN, LLC, ULTRA RECORDS, LLC, VOLCANO ENTERTAINMENT III, LLC, and ZOMBA RECORDING LLC,

Plaintiffs,

v.

SUNO, INC. and JOHN DOES 1-10,

Defendants.

Civil Action No. 1:26-cv-14275-FDS

**DEFENDANT SUNO, INC.'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION TO STAY</u>**

## I. INTRODUCTION

The current litigation (*UMG II*) is not new: it involves substantially the same plaintiffs asserting identical legal claims based on the same factual allegations against the same defendant as in *UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611 (D. Mass.) ("*UMG I*"), which has been proceeding before this Court for well over two years. The only material difference is that the plaintiffs in *UMG I* (all of whom appear here) assert 560 works Suno allegedly infringed and unlawfully accessed, while the current Plaintiffs assert over 60,000 works. Indeed, this case exists only because the *UMG I* Plaintiffs tried and failed to add these additional works to *UMG I* in the closing months of fact discovery. The Court rejected their attempt to expand the scope of that case at the eleventh hour, finding that "summary judgment on Suno's fair use defense will likely resolve the predominant issue in" *UMG I* and finding that proceeding with discovery on the plaintiffs' additional allegations would lead to "complexity and delay." *UMG I*, Dkt. 272 at 2 (D. Mass. Aug. 18, 2026). In doing so, the Court recognized that, if the *UMG I* Plaintiffs filed a separate suit to assert the additional works, that case could "be stayed pending resolution of the fair use issue in" *UMG I*. *Id.* at 3. That separate suit has now been filed, and a stay is warranted, as this Court contemplated.

There is no reason for *UMG II* to proceed while discovery in *UMG I* is ongoing. *UMG I* is nearing the close of fact discovery, with expert discovery and dispositive motions to follow next year. The outcome of those motions will have a significant impact on *UMG II*, potentially resolving some or all of Plaintiffs' causes of action and, at minimum, defining and further clarifying the scope of relevant discovery for Plaintiffs' claims and Suno's defenses. Rather than proceed with *UMG II* without the benefit of the Court's guidance in *UMG I*, the Court should stay this case, at least pending resolution of summary judgment in *UMG I*. Doing so will not prejudice

Plaintiffs, who will remain free to pursue any claims that survive *UMG I*, and will ensure that both cases move forward efficiently and without unnecessary burden to the Court or the parties.

## II. BACKGROUND

### *UMG I*

In June 2024, UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment[1] sued Suno, alleging that Suno infringed 560 works from their catalogs. *See UMG I*, Dkt. 1 (D. Mass. June 24, 2024). The *UMG I* Plaintiffs initially asserted two causes of action for copyright infringement, on the theory that Suno infringed their copyrights by using sound recordings they own or control to train Suno's AI model. *Id.* ¶¶ 83-100. They later added a third cause of action, alleging that Suno violated 17 U.S.C. § 1201(a) by "extract[ing], copy[ing], and download[ing] audio files" of the asserted works from YouTube. *See UMG I*, Dkt. 277 ¶¶ 100-06 (D. Mass. Aug. 25, 2026).

Over more than two years of fact discovery, the parties in *UMG I* have produced tens of thousands of documents, have reviewed many thousands more, and have taken over a dozen party depositions. The parties have also had frequent and repeated disputes over the relevance and proportional burden of the discovery sought by each side and have often disagreed on whether the requested discovery will be material to any arguments at summary judgment or trial, including whether it will play a role in deciding core issues like fair use and copyright misuse. *See, e.g.*, *UMG I*, Dkt. 209-1 at 11-12, 23-24 (D. Mass. Apr. 9, 2026) (dispute regarding relevance and proportionality of discovery from Suno related to AI-generated outputs on music streaming services, which *UMG I* Plaintiffs sought in connection with fair use arguments); *UMG I*, Dkt. 212

---

[1] Various record labels affiliated with Warner Music Group were among the original plaintiffs in *UMG I* but later dismissed their claims against Suno with prejudice. *See UMG I*, Dkt. 183 (D. Mass. Jan. 28, 2026). Consistent with the ability of *UMG I* to resolve claims in *UMG II*, Warner Music Group labels are not among the plaintiffs in *UMG II*.

at 1-8 (D. Mass. Apr. 10, 2026) (dispute regarding licensing negotiations reflecting viability of licensing market for training data, which Suno sought in connection with fair use arguments); *UMG I*, Dkt. 71 at 5, 9-10 (D. Mass. Mar. 19, 2025) (dispute over relevance and proportionality of certain discovery to first fair use factor); *UMG I*, Dkt. 150-1 (D. Mass. Oct. 21, 2025) (dispute regarding discovery relevant to copyright misuse, in which the *UMG I* Plaintiffs argued that the defense is not recognized in this Circuit and urged the Court to be "wary" of related discovery requests, *see id.* at 7). Discovery on the original copyright infringement claims in *UMG I* recently concluded, pending outstanding disputes. *See UMG I*, Dkt. 302 (D. Mass. Oct. 30, 2026). Discovery on the later-added Section 1201 claim is ongoing and will involve additional document productions and depositions from both sides, as well as third-party discovery related to YouTube's technological measures. *Id.*

The close of all fact discovery in *UMG I* is scheduled for November 20, 2026. *See id.* Expert discovery will follow, and dispositive motions are due June 22, 2027. *See id*.

**The *UMG I* Motion to Amend**

On May 21, 2026, the *UMG I* Plaintiffs moved to amend their complaint to add more than 60,000 asserted works. *See UMG I*, Dkts. 231, 232 (D. Mass. May 21, 2026). Suno opposed the motion, arguing that it "would necessitate substantial additional discovery and delay a potentially meritorious summary judgment decision on Suno's behalf," just as the parties were endeavoring to close out fact discovery. *UMG I*, Dkt. 237 at 1-3 (D. Mass. June 4, 2026). The Court denied the *UMG I* Plaintiffs' request. Observing that "summary judgment on Suno's fair use defense will likely resolve the predominant issue in this case," the Court found that "it would be desirable to delay or defer discovery and motion practice as to the 61,026 [new] works so as not to interfere unduly with the resolution of this matter as to the 560 original works" and concluded that the best

course of action was for the plaintiffs to file a "parallel case" with the additional works. *UMG I*, Dkt. 272 at 2-3 (D. Mass. Aug. 18, 2026). The Court deferred "[h]ow best to coordinate" the two proceedings to "another day" but offered the guidance that "[d]iscovery in [the second case] could proceed on a different schedule, or indeed be stayed pending resolution of the fair use issue in" *UMG I*. *Id.* at 3-4.

***UMG II***

A month after the Court denied the *UMG I* Plaintiffs' motion to amend, Plaintiffs filed *UMG II*. *See* Dkt. 1 (D. Mass. Sep. 18, 2026). *UMG II* involves substantially the same parties (UMG Recordings, Inc. and a number of its subsidiaries and Sony Music Entertainment and a number of its subsidiaries), seeks the same relief, and asserts identical causes of action based on the same basic factual allegations: that Suno downloaded Plaintiffs' works from YouTube and used those works to train its AI models. *Compare UMG I*, Dkt. 277 ¶¶ 84-106 (D. Mass. Aug. 25, 2026) *with* Dkt. 1 ¶¶ 108-30 (D. Mass. Sep. 18, 2026). While *UMG II* includes additional factual allegations, including concerning more recent versions of Suno's model and new product features, *see, e.g.*, Dkt. 1 ¶¶ 8, 43-50 (D. Mass. Sep. 18, 2026), the underlying theories of copyright infringement and circumvention of YouTube's technological measures are the same. Suno filed its Answer on October 20 and asserted the same affirmative defenses it asserted in *UMG I*, including fair use and copyright misuse. *Compare UMG I*, Dkt. 281 at 22-25 (D. Mass. Sep. 1, 2026), *with* Dkt. 11 at 39-42 (D. Mass. Oct. 20, 2026). Plaintiffs designated *UMG II* related to *UMG I*, *see* Dkt. 1-2 (D. Mass. Sep. 18, 2026), and the two cases are both proceeding before this Court.

## III. ARGUMENT

*UMG I*, which asserts the same claims based on the same conduct by the same defendant, will unquestionably affect *UMG II*. If the Court finds that Suno's conduct was fair use or that

YouTube's technological measures do not support a claim under Section 1201(a), *UMG I* could foreclose Plaintiffs' theories of liability in *UMG II*. If, on the other hand, the Court does not find fair use, work-specific discovery into Plaintiffs' ownership of and revenues related to the 60,000 asserted works will be necessary, in addition to other potential discovery. At the very least, the Court's rulings are likely to significantly narrow the issues to be decided and the scope of relevant discovery in *UMG II*. Rather than proceed with discovery in *UMG II* subject to this uncertainty, including two very different views on how the fair use factors should apply to Plaintiffs' claims, the Court should stay *UMG II* pending resolution of *UMG I* to avoid the significant burdens and inefficiencies of duplicative and potentially unnecessary litigation.

When deciding whether to grant a stay, courts consider: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy." *Alves v. Prospect Mortg., LLC*, No. 13-cv-10985, 2013 WL 5755465, at *2 (D. Mass. Oct. 22, 2013) (cleaned up). Each of these factors favors a stay of *UMG II*—a result this Court already contemplated when it declined to expand *UMG I* and instead directed the additional works to a parallel case.

*First*, Plaintiffs will not be prejudiced by the Court granting a stay. *UMG II* just started and has not gone beyond the initial pleadings. A stay would save Plaintiffs and Suno from expending further resources on this litigation and would last no longer than the pendency of any summary judgment motions in *UMG I*. When those motions have been decided, Plaintiffs will be able to pursue (or not pursue) their claims against Suno, with the benefit of the Court's guidance on the overlapping issues in *UMG I* and with each form of relief they seek equally available to them should their liability theories hold. *See* Dkt. 1 at 43-44 (listing requested relief); *cf., e.g.*, *InMode Ltd. v. BTL Indus., Inc.*, 774 F. Supp. 3d 263, 266 (D. Mass. 2025) ("Monetary damages

will provide adequate compensation for any lost sales that InMode suffers during the stay."); *Aplix IP Holdings Corp. v. Sony Computer Ent., Inc.*, 137 F. Supp. 3d 3, 5-6 (D. Mass. 2015) (noting that "potential for delay does not, by itself, establish undue prejudice" and that the plaintiff would "still be able to seek [] an injunction, as well as monetary damages with prejudgment interest" following *inter partes* review). Indeed, if the *UMG I* Plaintiffs prevail, the permanent injunctive relief that current Plaintiffs seek may already be in place by the time *UMG II* is unstayed.

Plaintiffs' vague claim, expressed in pre-motion correspondence, that they will be prejudiced because the record will "get[] older and less complete," *see* I. Dukanovic Decl., Ex. A, does not change the calculus. It is unclear what Plaintiffs mean by "less complete": Suno is and has been retaining relevant data in accordance with its legal preservation obligations, and Plaintiffs should be doing the same. To the extent Plaintiffs are concerned that witnesses may be unavailable or that their recollections may have faded, the *UMG I* record itself will preserve testimony from past years. This should obviate Plaintiffs' concern.

*Second*, the parties, as well as the Court, will benefit from a stay. Both parties agree that Plaintiffs' claims as to the 60,000 additional works turn on "the same theory, the same operative facts, the same defenses," and at least a similar "expert record." *See UMG I*, Dkt. 242 at 11 (D. Mass. June 11, 2026) (Plaintiffs' reply in support of motion to amend). Absent a stay, the parties will have to engage in expensive, duplicative litigation of the same issues currently presented in *UMG I*. There is also a strong possibility that the outcome in *UMG I* will obviate the need for certain discovery in this case or dispense with some claims or legal theories altogether.

For example, the *UMG I* Plaintiffs are pursuing a novel "market dilution" theory, claiming that factor four of the fair use test favors them because Suno-created outputs—which themselves do not infringe the *UMG I* Plaintiffs' works—will compete with and diminish the market for the

asserted works. *See, e.g.*, *UMG I*, Dkt. 277 ¶¶ 4, 14, 78-80 (D. Mass. Aug. 25, 2026); *see also, e.g.*, *UMG I*, Dkt. 212 at 13-14 (D. Mass. Apr. 10, 2026). Suno (like at least one court and the U.S. Government) has argued and will argue that this theory is legally unsupported. *Cf.*, *e.g.*, *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1031-32 (N.D. Cal. June 23, 2025) (holding that copying works for purposes of training an AI model "did not and will not displace demand for copies of" those works for purposes of the factor four analysis, "or not in the way that counts under the Copyright Act," because the harm alleged—an "explosion" of AI-generated works competing with the plaintiffs' works—is "not the kind of competitive or creative displacement that concerns the Copyright Act"); *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 25-cv-3483, Dkt. 316 at 14-17 (S.D.N.Y. Sep. 1, 2026) (statement of interest by the U.S. Government explaining that a "broad market dilution theory overlooks arguably the most basic elements of copyright infringement" and is "untethered from" the purposes of copyright law); 4 William F. Patry, *Patry on Copyright* § 10:155.40 (2026) (calling the "market dilution" theory "nuts"). But because no court in this Circuit has weighed in on this issue either way, both parties have expended considerable resources pursuing discovery related to "market dilution" in *UMG I*. If the Court in *UMG I* rejects this theory, the parties will be able to focus their resources on whatever issues remain material to *UMG II*. Similarly, the Section 1201(a) claim in both cases turns in part on the fundamental question of whether YouTube's "rolling cipher" is a technological measure subject to Section 1201(a). *See, e.g.*, *UMG I*, Dkt. 271 at 1, 10-12 (D. Mass. Aug. 18, 2026); *see also* Dkt. 1 ¶¶ 100-06. The resolution of that question in *UMG I* may be dispositive for *UMG II* and could obviate the need for discovery related to Section 1201 at all. Additionally, as Plaintiffs acknowledge, a determination of fair use in *UMG I* could "eliminate any need for ownership discovery on [the] tens of thousands of works" now asserted in *UMG II*. *UMG I*, Dkt. 242 at 12

(D. Mass. June 11, 2026). "[A]ddressing fair use" in *UMG I* before Plaintiffs are put to their burden of producing discovery to prove ownership of tens of thousands of works in *UMG II* "would be far more efficient for the parties, as well as the Court." *UMG I*, Dkt. 232 at 15 (D. Mass. May 21, 2026) (Plaintiffs' motion to amend).

There is no reason to expend time and resources litigating *UMG II* while these and other issues are outstanding in—and may be mooted by—*UMG I*, and Suno will be prejudiced by doing so.

*Third*, judicial economy clearly favors a stay. For the reasons discussed above, and others, *UMG I* is certain to narrow the issues and scope of relevant discovery in *UMG II*, allowing the parties to proceed more efficiently and potentially obviating the need for certain discovery or discovery disputes. Both the parties and the Court should focus their resources on *UMG I*, rather litigating *UMG II* in parallel without the benefit of the Court's summary judgment rulings on the same issues presented in *UMG I*. *Cf.*, *e.g.*, *Aplix*, 137 F. Supp. 3d at 5 (granting a stay that would "simplify the issues in this litigation"); *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357-58 (D. Mass. 2015) (similar). Indeed, the Court contemplated a stay in denying Plaintiffs' motion to amend to add the 60,000 works currently asserted in *UMG II*, observing that discovery in the new case "could . . . be stayed pending resolution of the fair use issue in" *UMG I*. *UMG I*, Dkt. 272 at 3 (D. Mass. Aug. 18, 2026). That is the most efficient path for the Court and for the parties, and the Court should grant a stay here.

## IV. CONCLUSION

For the foregoing reasons, Suno respectfully requests that the Court enter an order to stay this case pending resolution of summary judgment in *UMG I*.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Joseph R. Wetzel*
Andrew M. Gass (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Ivana Dukanovic (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
andrew.gass@lw.com
brittany.lovejoy@lw.com
joe.wetzel@lw.com
ivana.dukanovic@lw.com

Shlomo Fellig (BBO# 699643)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
shlomo.fellig@lw.com

Grace McLaughlin (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue Of The Americas
New York, NY 10020
Telephone: (212) 906-2967
grace.mclaughlin@lw.com

*Counsel for Defendant Suno, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent October 30, 2026 to those identified as non-registered participants..

*/s/ Joseph R. Wetzel*
Joseph R. Wetzel