**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ALAMO RECORDS, LLC, ARISTA MUSIC, ARISTA RECORDS, LLC, LAFACE RECORDS, LLC, RECORDS LABEL, LLC, SONY MUSIC ENTERTAINMENT US LATIN, LLC, ULTRA RECORDS, LLC, VOLCANO ENTERTAINMENT III, LLC, and ZOMBA RECORDING LLC,

Plaintiffs,

v.

SUNO, INC. and JOHN DOES 1-10,

Defendants.

Civil Action No. 1:26-cv-14275-FDS

**Leave to File Reply Granted on 11/25/2026**

**DEFENDANT SUNO, INC.'S REPLY MEMORANDUM OF LAW**
**<u>IN SUPPORT OF MOTION TO STAY</u>**

## I. INTRODUCTION

Plaintiffs' "partial stay" proposal—raised for the first time in their opposition brief—is a remarkable exercise in self-dealing. Under it, Plaintiffs would put off the one category of discovery least likely to be affected by the Court's ruling in *UMG Recordings, Inc. v. Suno, Inc.*, No. 1:24-cv-11611 (D. Mass.) ("*UMG I*"): proof that they own the more than 60,000 works they assert. Suno, meanwhile, would immediately have to open its files on the core of its business: its "ongoing model training, development, and use of its AI models"; its business partnerships; its "commercial footprint and business development," including its "entry into new business segments, markets, and distribution channels"; its new product features; its investor funding and presentations; and its financial condition. Dkt. 37 ("Opp.") at 8. In return, Plaintiffs offer discovery only on subjects on which they hope to build their own fair use case. *Id.* at 9. Plaintiffs, in short, propose to take the discovery they want now and postpone the discovery they owe.

The hypocrisy runs deeper still: Plaintiffs' proposal concedes the basic premise of Suno's motion. Plaintiffs would defer ownership discovery because a fair use "ruling [in *UMG I*] could obviate the need to engage in this exercise." *Id.* at 8. Plaintiffs thus acknowledge that it is eminently reasonable to postpone costly discovery until the Court resolves near-identical legal questions in *UMG I*, a case that, by Plaintiffs" own account, involves "the same theory, the same operative facts, the same defenses" as this one ("*UMG II*"). *UMG I*, Dkt. 242 at 11 (D. Mass. June 11, 2026). The answers to those questions could swiftly resolve this case. At a minimum, the Court's rulings in *UMG I* will clarify what discovery here is relevant and proportional. Plaintiffs would instead have Suno take on the broadest possible discovery before any of that guidance arrives.

Plaintiffs' claimed prejudice from a complete stay, namely that the evidentiary record will "degrade," during the pendency of the stay, Opp. at 3, is baseless. First, the *UMG I* record already reaches the subjects Plaintiffs identify. Suno agreed in *UMG I* to provide 30(b)(6) testimony on

"how Suno's product, model, or training-data composition changed or will change for Version 6," the latest Suno model on the market. Dkt. 37-3 at 3. The *UMG I* Plaintiffs have questioned multiple Suno witnesses about v6 and Suno's recent product features. They have obtained Suno's partnership agreements and are receiving 30(b)(6) testimony on Suno's licensing discussions to the present day. They have taken testimony on Suno's market expansion through the fall of 2026. And they have yet to depose Suno's co-founders, its CEO and CTO. Second, the evidence will be equally available when the temporary stay lifts. Suno is preserving the record of its conduct at issue. Rule 30(b)(6) will require Suno to prepare its designees on relevant topics regardless of their personal involvement or recollection. That rule exists to capture precisely the "institutional knowledge" Plaintiffs say only testimony can preserve. *See* Opp. at 11.

In inviting Plaintiffs to file this separate action, the Court recognized that discovery "could . . . be stayed pending resolution of the fair use issue in" *UMG I*. *UMG I*, Dkt. 272 at 3 (D. Mass. Aug. 18, 2026). The Court should enter that stay now. And it certainly should not accept a proposal that would require Suno to litigate in parallel while Plaintiffs defer their own discovery obligations.

## II. ARGUMENT

### A. Plaintiffs' Proposal Will Unnecessarily Burden the Court and the Parties

Plaintiffs' proposal fails to address the primary justification for a stay: sparing the parties unnecessary discovery and the Court unnecessary discovery disputes. The basis for their proposal is that the discovery they would pursue concerns "four subjects the [*UMG I*] record does not reach" and that will not be produced in that litigation: (1) Suno's most recent models and technology, including v6; (2) Suno's licensing activities; (3) Suno's "commercial footprint and business development"; and (4) Suno's financial condition for the period after the *UMG I* record closes. *See* Opp. at 3, 8. As discussed in the following section, the majority of these subjects are already part of the record in *UMG I*. But even if that were not the case, Plaintiffs ignore that *UMG I* will

inevitably dictate what information from the post-*UMG I* period is relevant and proportional.

While the *UMG II* Complaint raises some allegations not in *UMG I*, primarily concerning later versions of Suno's AI model and more recent product features, the core issues in both cases are the same: whether Suno's use of sound recordings to train its AI model is fair use and whether Suno circumvented an effective access control to obtain those recordings. Plaintiffs themselves called the claims they would bring here a matter of "the same theory, the same operative facts, the same defenses." *UMG I*, Dkt. 242 at 11 (D. Mass. June 11, 2026) (Plaintiffs' reply in support of motion to amend). Plaintiffs' proposal ignores that the Court's resolution of near-identical issues in *UMG I* could effectively decide the legal issues presented in *UMG II*—whichever way the Court rules—thereby conserving judicial and party resources. Certainly, if the Court finds that Suno's training is fair use, or that YouTube's "rolling cipher" is not a technological measure that effectively controls access under Section 1201(a), *UMG I* could foreclose Plaintiffs' theories of liability here altogether. *See* Dkt. 31 ("Br.") at 4-5, 7. Indeed, when it comes to Plaintiffs' own discovery obligations, Plaintiffs recognize that a fair use determination in *UMG I* could "eliminate any need for ownership discovery on [the] tens of thousands of works" now asserted here. *UMG I*, Dkt. 242 at 12 (D. Mass. June 11, 2026). Because the Court's decision in *UMG I* is likely to address the key legal disputes in this case, judicial economy counsels in favor of a stay.

At the very least, the Court's decisions in *UMG I* may narrow the discovery required in *UMG II*. Plaintiffs' request for discovery on "Suno's ongoing licensing activities and efforts to license training data," Opp. at 8, provides a good example. A summary judgment opinion by this Court holding that Plaintiffs cannot predicate their fair use Factor Four arguments on purported market harms resulting from Suno's failure to take a license because Plaintiffs cannot demand a license for a transformative use of their works—as two courts have already held—could obviate

the need for this discovery altogether. *See, e.g.*, *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025) (finding that, "to prevent the fourth factor analysis from becoming circular and favoring the rightsholder in every case, harm from the loss of fees paid to license a work for a transformative purpose is not cognizable" and rejecting such a market as "irrelevant"); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1032 (N.D. Cal. 2025) (finding that a market for licensing works for use as training data "is not one the Copyright Act entitles Authors to exploit"). If this Court were to likewise conclude that harm to the market for licensing copyrighted works as training data is not cognizable under Factor Four, discovery related to the feasibility of creating a music generative AI model through licensing would be irrelevant. Such a ruling would also make unnecessary the reciprocal discovery Plaintiffs offer into their own licensing practices, including discovery on "the market for or value of licensing sound recordings as AI training data" and "Plaintiffs' own licensing of recordings to AI developers." Opp. at 3, 9. The Court's continued discovery rulings and eventual fair use determination in *UMG I* would provide similar instruction on whether the other categories of discovery Plaintiffs have identified are relevant or, if so, whether their relevance is proportional to the burden of production. But Plaintiffs' proposal would instead have Suno conduct expansive discovery without the benefit of the Court's findings in *UMG I*.

In addition to being inefficient and unnecessarily burdensome, Plaintiffs' proposal is also unadministrable in practice. Plaintiffs claim they are offering a "narrowly tailored path," which opens discovery only into four discrete subjects. Opp. at 9. These subjects are, in fact, incredibly broad, encompassing "Suno's successor models and its ongoing model training, development, and use of its AI models" and Suno's "commercial footprint and business development." *Id.* at 8. And Plaintiffs expressly reserve the right to seek any "further discovery" that they deem "necessary." *Id.* at 9. The parties will almost certainly have disagreements about both what falls into the four

enumerated categories and whether any additional discovery is "necessary." Rather than expend resources in the coming months litigating the scope of Plaintiffs' partial stay, the better option is to stay discovery entirely, to resume following summary judgment in *UMG I*.

Plaintiffs are also wrong that the Court did not contemplate a stay like the one Suno seeks as an option to manage two parallel litigations. *See id.* at 14-15. The Court explained that Plaintiffs are entitled to "pursue their copyright claims" by filing a separate lawsuit, and the Court would determine "[h]ow best to coordinate that proceeding." *UMG I*, Dkt. 272 at 3-4 (D. Mass. Aug. 18, 2026). Among the options the Court outlined was the possibility of staying *UMG II* "pending resolution of the fair use issue in" *UMG I*. *Id.* at 3. This proposal was not limited to ownership discovery for the newly asserted works. The fact that a complete stay would have the effect of "suspending [the case] entirely on arrival" is also not an "unnatural reading" of the Court's order, *see* Opp. at 15; such a stay would allow Plaintiffs to pursue their claims and avoid any statute of limitations issues while conserving party and judicial resources during the pendency of *UMG I*.

**B. Plaintiffs Will Not Be Prejudiced by a Stay**

The primary argument Plaintiffs offer in favor of their proposal is that discovery in *UMG I* does not extend to cover all potentially relevant developments that post-date the close of document discovery in that case and that postponing the development of the factual record on those matters in *UMG II* somehow risks degrading the record. *See* Opp. at 2-3, 10-11 (arguing that Plaintiffs will be prejudiced by "postpon[ing] building the record"). It is of course true that, as in all litigations, the evidentiary record in *UMG I* will provide only a temporal snapshot, rather than faithfully capture in real time every factual development on the ground—although Plaintiffs overstate the purported factual gap in *UMG I*. Contrary to Plaintiffs' assertions, however, Suno does not seek to prevent Plaintiffs in *UMG II* from "examin[ing]" through discovery relevant factual issues that are not part of the *UMG I* record once the stay is lifted. *See* Opp. at 16. The sole

question for the purpose of this motion is whether Plaintiffs will be prejudiced by waiting until after the Court's summary judgment opinion in *UMG I* (and the benefit of its guidance) to receive that discovery.[1] Plaintiffs' arguments do not demonstrate any material prejudice.

Plaintiffs' complaint that, when discovery commences in *UMG II*, "the contemporaneous record of Suno's most recent conduct will have to be reconstructed," *see* Opp. at 10-11, simply describes how discovery works in all cases. It is a routine feature of litigation that discovery often occurs months or even years after the relevant conduct; in *UMG I*, for instance, discovery into Suno's initial model training is still ongoing well over two years after Suno obtained its training data, and the *UMG I* Plaintiffs designated 30(b)(6) witnesses to testify on decades-old artist agreements and copyright registrations about which the witnesses had no personal knowledge. *See, e.g.*, Ex. A at 24:4-27:19; Ex. B at 44:8-45:18. Suno is preserving a record of its conduct at issue in this litigation, *see* Br. at 6, and Plaintiffs will be able to obtain all relevant discovery when the stay is lifted. This discovery will likely include 30(b)(6) testimony, where Suno will be obligated to ensure that its deponents are educated about the relevant topics, even if they were not personally involved or do not initially recall all details.[2] Indeed, Rule 30(b)(6) is designed to capture exactly the "institutional knowledge," Opp. at 11, that Plaintiffs seek. *See* Fed. R. Civ. P. 30(b)(6) (Rule 30(b)(6) designees "must testify about information known or reasonably available to the

---

[1] Plaintiffs are wrong that Suno's proposal would have this Court "do nothing for two years." Opp. at 15. To the contrary, a stay will allow the Court and the parties to focus their efforts on *UMG I*, which will be instructive for *UMG II*. Moreover, summary judgment motions in *UMG I* should be fully briefed by this time next year, not two years from now. *See UMG I*, Dkt. 302 (D. Mass. Oct. 30, 2026); *UMG I*, Dkt. 304 (D. Mass. Nov. 19, 2026).

[2] Unlike in *Austin v. Unarco Indus., Inc.*, 705 F.2d 1 (1st Cir. 1983), a suit brought by "victims of asbestos-related cancer and their survivors," it is not the case here that "crucial witnesses are dying." *Id.* at 3, 5. In *Katz v. Liberty Power Corp., LLC*, 2020 WL 3440886 (D. Mass. June 23, 2020), meanwhile, the defendant sought a stay two years into the litigation, and the plaintiffs had "already documented the loss of potential evidence in [the] case." *Katz*, 2020 WL 3440886, at *4.

organization”). Plaintiffs’ general references to the passage of time thus do not establish prejudice.[3]

Plaintiffs’ claim that they have been blocked from pursuing contemporaneous discovery relevant to *UMG II* is also false. *See* Opp. at 10-11. Plaintiffs are already obtaining discovery in *UMG I* on a number of the subjects they claim that record “does not reach” and that are newly asserted in the *UMG II* Complaint.[4] Plaintiffs are incorrect, for instance, that “[n]o [*UMG I*] witness has been designated to testify about how v6 was trained.” Opp. at 5. As the email Plaintiffs rely on makes clear, Suno agreed to provide 30(b)(6) testimony on “how Suno’s product, model, or training-data composition changed or will change for Version 6,” the latest Suno model version on the market. *See* Dkt. 37-3 at 3. The *UMG I* Plaintiffs have also elicited testimony on v6 and Suno’s recent product features from multiple Suno witnesses and will likely continue to do so in the remaining depositions, including those of Suno’s CEO and CTO, which have not yet occurred. *See, e.g.*, Ex. C at 46:22-47:12; 237:1-244:3-245:23; 259:12-16; Ex. D at 157:11-161:8. Plaintiffs are also set to depose “the engineer responsible for Suno’s . . . training data acquisition,” who recently left the company. *See* Opp. at 11. Plaintiffs characterize his departure as the “manifestat[ion]” of their concerns. *Id.* In fact, he proves the opposite: though he no longer works at Suno, Plaintiffs have faced no barrier to obtaining his personal and 30(b)(6) testimony, and his

[3] That the *UMG I* Plaintiffs had to engage in discovery to learn the contents of Suno’s highly confidential training data does not amount to prejudice. *See* Opp. at 3. Plaintiffs have attempted this argument before, claiming that, because Suno did not produce its training data to an adverse party before litigation commenced and before a protective order or training data inspection protocol was entered, they should have been permitted to add 60,000 additional works to *UMG I*. *See UMG I*, Dkt. 232 at 10 (D. Mass. May 21, 2026). The Court did not credit this argument when the *UMG I* Plaintiffs used it to support their motion to amend and should not credit it here.

[4] Suno does not object to a cross-use order that would allow discovery in *UMG I* to be used in *UMG II*, though its exact scope would need to be negotiated. Suno also does not object to Plaintiffs’ proposed alternative relief, *see* Opp. at 16, subject to the same qualification, though it reserves on the question of whether any stay should continue pending appeal and does not waive its right to seek that relief as appropriate.

"institutional knowledge" will be part of the record in *UMG II* as well. *See* n.4, *supra*.

Suno is similarly providing 30(b)(6) testimony on Suno's "pre- and post-suit discussions of licensing sound recordings as training data for Suno's generative AI music service," *see* Ex. E—in addition to the 30(b)(1) testimony and partnership agreements the *UMG I* Plaintiffs have already obtained. *See, e.g.*, Ex. D at 82:3-85:8; 390:21-399:16. The *UMG I* record also includes testimony on Suno's "entry into new business segments, markets, and distribution channels" up through the fall of 2026 and its representations to investors on the same, *see* Opp. at 8, from both Suno witnesses and third-party investors. *See, e.g.*, Ex. C at 272:18-275:5, 411:8-415:17; Ex. F at 331:2-336:21. Thus while there may be some delta between the *UMG I* discovery and the discovery Plaintiffs will seek in *UMG II* simply due to the passage of time, it is not the case that the subjects Plaintiffs identified are wholly "outside the scope" of *UMG I* or that they will not be able to rely on close-in-time deposition testimony on many of the factual allegations in the *UMG II* Complaint. This reality further undermines Plaintiffs' claims of prejudice from a temporary stay.

Finally, Plaintiffs' argument that Suno's continued operations will cause harm to the market for Plaintiffs' works during a stay, Opp. at 12, is a merits argument dressed up as a prejudice claim, and one Plaintiffs have never tested by seeking preliminary injunctive relief. Plaintiffs cannot ask this Court to temporarily stay discovery based on a theory of harm they have not proven, much less shown is not redressable through monetary damages. *See* Br. at 5-6. Plaintiffs' argument is also belied by the fact that their own proposal would "defer[] substantial discovery," including discovery necessary to carry their prima facie burdens for copyright infringement, pending the outcome of *UMG I*, Opp. at 8, only after which the parties would complete the necessary factual record. If Plaintiffs were truly concerned about Suno "entrench[ing] a market position" during the pendency of a stay, *id.* at 12, they would not be seeking a schedule

that, like Suno's, ensures that the present case will not be resolved until after *UMG I*.

### C. Suno Will Be Prejudiced by Undertaking Sweeping Discovery That *UMG I* May Render Unnecessary

Plaintiffs are incorrect that Suno has "identifie[d] no hardship" it will experience absent a temporary stay. *See id.* at 13. As Suno has explained, proceeding in *UMG II* while *UMG I* is pending will force Suno to expend significant time and resources on discovery that may be entirely irrelevant or substantially overbroad with respect to the material issues in this case. *See* Br. at 6-8. The broad categories of discovery Plaintiffs seek in the meantime—including into all of Suno's "successor models and its ongoing model training, development, and use of its AI models" (the core of Suno's business) and "Suno's business development," including its "entry into new business segments, markets, and distribution channels" and "new product features," Opp. at 8—only add to this concern. Courts regularly recognize the burden of potentially unnecessary discovery exactly like that at issue here as a material hardship, and this Court should too. *See, e.g.*, *Schumann v. Amazon, Inc.*, 2021 WL 5069178, at *3 (D. Or. July 19, 2021) (finding that, while the "requirement to defend a suit" alone does not constitute hardship, "subjecting a litigant to the hardship and inequity of unnecessary and duplicative litigation favors a stay" and granting stay where "dispositive motions practice" in previously filed case "may curtail a need for discovery"); *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 508 (S.D.N.Y. 2019) (granting stay where the defendant would "incur burden that may turn out to be unnecessary" because of pending case which would grant defendant immunity); *cf. New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 37 (D. Mass. 2015) (granting stay that would "conserve party and judicial resources by allowing [a separate] investigation to narrow the issues before this case proceeds").

Nor is the unnecessary burden placed on Suno by Plaintiffs' proposal "the ordinary condition of every defendant." Opp. at 13. This is not a typical situation where the parties must

proceed with discovery despite unavoidable "uncertainty" about what, exactly, will be relevant to dispositive motions. *See id.* at 13-14. Both cases concern "the same theory, the same operative facts, [and] the same defenses," *UMG I*, Dkt. 242 at 11 (D. Mass. June 11, 2026); they also concern essentially the same Plaintiffs and the same Defendant, and *UMG I* is two years ahead of *UMG II* in discovery. While *UMG I* may not dispose of *UMG II* entirely, it is certain to instruct the Court and the parties on how discovery should proceed in this substantially overlapping case. This is particularly important given that *UMG II*, like *UMG I*, involves new technology and novel and untested legal theories. Both the Court and the parties are currently proceeding with minimal guidance on what discovery will be relevant; *UMG I* will provide that guidance. The hardship to Suno of proceeding with discovery must be assessed in light of the specific situation presented here, not by general comparisons to the "ordinary condition" of other defendants.[5]

### D. Plaintiffs Cannot Be Permitted to Avoid Their Own Discovery Obligations, While Burdening Suno with Broad Discovery

Even if the Court declines to stay this case, it should reject Plaintiffs' counterproposal, which is "reciprocal" in name only. Under it, Suno would open its files on every model it released in 2025 and 2026, its product features, its licensing efforts, its funding rounds, its investor presentations, and its finances. Plaintiffs, meanwhile, would put off the one category of discovery that goes to the heart of their own prima facie case: proof that they actually own the more than 60,000 works they assert. *See* Opp. at 8. What Plaintiffs offer in return is limited to the market for AI training licenses and the effect of AI-generated music on their recordings. *Id.* at 9. Those are subjects on which Plaintiffs, not Suno, hope to build their fair use case. In short, Plaintiffs propose

[5] In *Katz*, for example, the court rejected the defendant's motion to stay a Telephone Consumer Protection Act litigation while the Supreme Court reviewed the constitutionality of a different provision of the statute, finding the possibility that the Supreme Court opinion would render the case moot too remote to justify a stay. *Katz*, 2020 WL 3440886 at *3; *see* Opp. at 13 (relying on *Katz*). Unlike in *Katz*, *UMG I* will plainly address the legal and factual issues presented here.

to take the discovery they want now and postpone the discovery they owe. That arrangement is not a compromise. It is a one-sided proposal that would burden Suno and spare Plaintiffs their most basic obligation as copyright claimants.

Plaintiffs bear the prima facie burden of proving, for each work that they assert, "ownership of a valid copyright." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In this case, that means that, in order to establish that Suno infringed any of the over 60,000 works at issue, Plaintiffs will have to demonstrate that they own or have exclusive rights to that work. *See, e.g.*, *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 3:22-cv-04223, Dkt. 490 at 26:12-14 (N.D. Cal. filed Mar. 16, 2026) (noting that the plaintiff's burden of proof to show copyright ownership "isn't lessened because" it "decided to bring mass infringement cases"). For its part, Suno is entitled to discovery establishing Plaintiffs' ownership so that it can test those claims. At a minimum, this involves the work-for-hire agreements and/or title assignments between themselves and the artists whose works they assert. This is not merely an academic exercise: in *UMG I*, ownership discovery has [redacted]. *See* Ex. A at 88:6-93:20 ([redacted]).

If the Court is inclined to permit discovery to proceed before *UMG I* is resolved, Plaintiffs' proposal gets the sequence exactly backwards. Plaintiffs would defer ownership discovery on the theory that a fair use "ruling [in *UMG I*] could obviate the need to engage in this exercise." Opp. at 8. But that logic applies equally to the discovery Plaintiffs want from Suno, all of which is directed to fair use and could be narrowed or eliminated by the same ruling. Plaintiffs cannot invoke *UMG I* as a reason to defer their own obligations while denying that it justifies deferring Suno's. If any discovery is to go forward now, it should begin with the element of Plaintiffs' claims

that does not depend on how the Court resolves fair use: their ownership of each of the more than 60,000 works they assert, which will require time and resources to produce. What Plaintiffs may not do is open discovery into Suno's business while their own prima facie case waits.

Plaintiffs' proposal should also be viewed in the context of their previous attempts to avoid ownership discovery. In *UMG I*, the plaintiffs initially and unsuccessfully sought to bifurcate discovery, having the parties first proceed to summary judgment on fair use, with the plaintiffs establishing that they own the works at issue only afterward. *See UMG I*, Dkt. 39 at 1-5 (D. Mass. Oct. 9, 2024); *UMG I*, Dkt. 44 at 3:22-4:8 (D. Mass. filed Nov. 1, 2024). Once in discovery, they refused to produce basic information concerning their chain of title, relenting only after Suno sought Court intervention. *See UMG I*, Dkt. 70 (D. Mass. Mar. 19, 2025). Then, when the *UMG I* plaintiffs sought to amend their Complaint to assert additional works, they once again sought to shirk ownership discovery, proposing that the Court decide fair use before they "complet[e] ownership-related discovery." *UMG I*, Dkt. 232 at 15 (D. Mass. May 21, 2026). The Court again rejected the plaintiffs' attempt and recognized that they would have to conduct discovery for each of the asserted works. *UMG I*, Dkt. 272 at 2 (D. Mass. Aug. 18, 2026).

Plaintiffs cannot be permitted to treat their prima facie obligations as a formality or something to be delayed while they seek expansive discovery from Suno. Before they can recover in this litigation, Plaintiffs will need to establish their ownership of each of the 60,000 works they have asserted. If the Court denies Suno's motion and discovery proceeds, Plaintiffs have no basis to put off this discovery. Though the most sensible path forward is to stay discovery altogether, the Court should in any event deny Plaintiffs' requested relief.

## III. CONCLUSION

For the foregoing reasons and those articulated in the opening memorandum, Suno requests that the Court stay this case pending resolution of summary judgment in *UMG I*.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Brittany N. Lovejoy*

Andrew M. Gass (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Ivana Dukanovic (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
andrew.gass@lw.com
brittany.lovejoy@lw.com
joe.wetzel@lw.com
ivana.dukanovic@lw.com

Shlomo Fellig (BBO# 699643)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
shlomo.fellig@lw.com

Grace McLaughlin (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-2967
grace.mclaughlin@lw.com

*Counsel for Defendant Suno, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true, unredacted version of the foregoing document was served by electronic mail on all counsel of record this 20th day of November, 2026.

*<u>/s/ Brittany N. Lovejoy</u>*
Brittany N. Lovejoy